UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

**JOYCE L. KLAWINSKI**

      **Plaintiff,**

v.                                               Case No. 2:09-CV-322-FtM-DNF

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

      **Defendant.**
_____/

### **OPINION AND ORDER**[1]

This matter is before the Court on Plaintiff's complaint (Doc. #1), seeking review of the final decision of the Commissioner of Social Security of the Social Security Administration (the Commissioner) denying her claim for disability and disability insurance benefits (DIB) pursuant to 42 U.S.C. § 405(g). The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties have filed legal memoranda. For the reasons set forth below, the Court finds that the Commissioner's decision is due to be **AFFIRMED**.

**I. SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ'S DECISION AND STANDARD OF REVIEW**

A plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months.

---

[1]     Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred by an Order of Reference dated 11/18/2008. (Doc. 11) and reassigned to Magistrate Judge Douglas N. Frazier per (Doc. 22) consent.

42 U.S.C. §§ 423 (d) (1)(A); 1382c(a)(3)(A). The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. § 416.920(a)-(f); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

On June 23, 2005, the Plaintiff filed an application for disability and disability insurance benefits alleging an onset date of December 31, 2002. [Tr. 23]. The Plaintiff appeared and testified at a hearing held on June 11, 2007, in Orlando, Florida, before Administrative Law Judge ("ALJ") Philemina M. Jones. Also testifying at this hearing was Ronald H. Watson, vocational expert. [Tr. 23, 313-316]. In her decision dated August 3, 2007, the ALJ denied benefits, finding the Plaintiff not disabled. [Tr. 23-29]. The Plaintiff filed a request for review of the hearing decision and on June 10, 2008, the Appeals Council denied the request for review. [Tr. 6-8]. The ALJ's decision became the final decision of the Commissioner. This decision is now ripe for review under the Social Security Act, 42 U.S.C. § 405(g).

The Decision of Administrative Law Judge dated August 3, 2007, denied the Plaintiff's claims for disability or disability insurance benefits. At Step 1 the ALJ found the Plaintiff had not engaged in substantial gainful activity since December 31, 2002, her alleged disability date, through her date last insured of December 31, 2004. At Step 2 the ALJ found that the Plaintiff has the following severe impairment: osteoarthritis of the knees. [Tr. 26]. The ALJ found that the Plaintiff has the residual functional capacity to perform sedentary work with restrictions. [Tr. 25]. At Step 3 the ALJ found the Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P,

Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526). At Step 4 the ALJ determined the Plaintiff was able to perform her past relevant work as a "secretary ." [Tr. 26]. At Step 5 the ALJ determined the Plaintiff could perform sedentary work, with restrictions. The vocational expert determined that the Plaintiff could perform her past relevant work as a secretary as it is defined in the *Dictionary of Occupational Titles* [DOT]. [Tr. 28]

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II. REVIEW OF FACTS AND CONCLUSIONS OF LAW

### A. BACKGROUND FACTS:

The Plaintiff was born on March 3, 1941, and was 66 years old at the time of the June 11, 2007, hearing. [Tr. 296, 300]. The Plaintiff testified that she completed high school through the eleventh grade and had no vocational training. [Tr. 301]. The Plaintiff has past relevant work experience as a secretary. [Tr. 28, 314]. However, the Plaintiff argues that the job she held was as an office manager which required her to pick up parts, deliver them to job sites and work on the showroom floor. Further, the Plaintiff testified that she occasionally helped unload trucks and semis with AC parts. [Tr. 315]. The Plaintiff alleges her disability began on December 31, 2002. The Plaintiff's earning record confirms she is insured for benefits through December 31, 2004. [Tr. 29]. The Plaintiff must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

On July 14, 1999, [well before the alleged onset date], the Plaintiff underwent an initial consultation with Dr. Jonathan Javors, D.O. Dr. Javors found upon examination, that the Plaintiff was able to stand without difficulty and had complete extension in the seated position. Dr. Javors found "no grinding at the patellofemoral compartments with minimal lateral tilting." The Plaintiff also had full range of motion of both hips. [Tr. 108].

The right knee had no effusion and no retropatellar tenderness. The patellar compression test, reverse patellar apprehension and patella apprehension tests were all negative. [Tr. 109]. The Plaintiff had complete extension and flexed to 130 degrees with no pain and no medial or lateral joint tenderness. The x-rays taken revealed that the Plaintiff had some early degenerative arthritis

of the medial compartments with spurring bilaterally, significant lateral tilt and subluxation with arthritic changes and spurring of the superior and inferior poles of the patella. [Tr. 109].

On May 16, 2003, the Plaintiff underwent a lumbar MRI because of her history of spinal stenosis and low back pain. The MRI revealed that the Plaintiff's vertebral bodies maintained normal heights, alignment and signal. [Tr. 111]. There was degenerative disc disease severe at L4-L5 with disc space narrowing and dehydration of the discs. There was no evidence of fracture and no focal mass. [Tr. 111]. A medical note dated the same date, documented that the Plaintiff complained of arthritic symptoms in both knees. Upon examination, the Plaintiff walked with a bilateral varus knee and her range of motion was 0 to 125 degrees and she had medical osteo-phytes. The Plaintiff's joints were stable with mild effusion. [Tr. 242].

On October 19, 2004, the Plaintiff continued to complain of osteoarthritic symptoms to her knees but she was adverse to any type of surgical treatment. Examination revealed bony crepitation with palpable osteophytes, she lacked 2 to 3 degrees of full extension and was able to flex the knee to 100 degrees. The Plaintiff's prescriptions were refilled and she was advised to follow-up as needed. It was noted, however, that over the long term the Plaintiff would need surgical treatment. [Tr. 236].

On April 4, 2005, the Plaintiff was seen by Dr. Eugene Melvin as a new patient. The Plaintiff appeared healthy and in no acute distress. The Plaintiff did transfer from the chair to the exam table with some difficulty. The lower extremities revealed no cyanosis, clubbing, petechiae, infections, nodes or varicosities. [Tr. 155]. There was tenderness to the left and right of the medial knee areas. Range of motion in the knees of the Plaintiff revealed no crepitus or contracture. Osteoarthritic changes of both knees was noted. [Tr. 156].

The Plaintiff had no skin lesions, masses or scars on her back and her exam of the spine showed normal posture, ambulation, stance and alignment of the Plaintiff's lumbar spine was normal. The neurological examine(sensory) showed stocking-glove type of hypoesthesia over both lower extremities up to the knees, but there was no allodynia or hyperalgesia noted in the lower extremities. The deep tendon reflexes in the lower extremity were 2/4+ at patellar and Achilles without Babinski or clonus. [Tr. 156].

An MRI, dated April 11, 2005, [approximately 3 months after the period under consideration by the ALJ] showed lumbar spondylosis with multi-level disc bulges present; moderate canal stenosis at L4-5; related to the disc bulge and facet arthropathy, with foraminal narrowing. [Tr. 152]. At L-5-S1 there was disc bulge with Grade I spondylolisthesis and there were severe bilateral foraminal stenosis, but no significant central canal stenosis. [Tr. 152]. On April 11, 2005, the MRI of both knees revealed severe osteoarthritis, but no acute osseous abnormality was present. [Tr. 153].

On June 15, 2005, the Plaintiff consulted with Dr. Craig J. Della Valle complaining of pain in her knees but reported she did not use an assistive device for walking. [Tr. 227-228]. The Plaintiff had an antalgic gait and a mild varus deformity of both knees. There was normal sensation to light touch, 5/5/ motor strength, symmetric deep tendon reflexes and a plantar response which was flexor. The Plaintiff appeared alert, awake, oriented times three and quite pleasant. [Tr. 227].

On September 15, 2005, Dr. Maria Hansberry noted, "With analgesia, the patient is not limited to how far she is able to walk. Specifically, she was able to walk for several hours intermittently while shopping five days previous." [Tr. 203]. The Plaintiff appeared to be in no

distress and although her lower extremity exam revealed no edema, there was pronounced crepitus at the left knee. The assessment found she was a "64 year old female with recently diagnosed type II diabetes and hypertension, in general presents in very good health." [Tr. 204]. On November 21st to 23rd, 2005, the Plaintiff underwent an elective left total knee arthroplasty. [Tr. 279].

When the Plaintiff was seen on January 17, 2006 [again after the period under consideration by the ALJ], the Plaintiff advised Dr. Maria Hansberry that "[s]he continues to be physically active and in fact has decreased her use of pain medication greatly." [Tr. 272].

**B.    SPECIFIC ISSUES:**

**1.    THE ALJ COMMITTED REVERSIBLE ERROR BY FAILING TO COMPLY WITH SSR 83-20 [FAILING TO CALL A MEDICAL ADVISOR TO THE HEARING} DUE TO THE LACK OF RFC ASSESSMENTS IN THE RECORD PRIOR TO HER LAST DATE INSURED OF 12/31/2004.**

The Plaintiff argues [relying on SSR 83-20] that the ALJ failed to call a medical expert to determine the onset date of her disability particularly with impairments that are considered to be slow and progressive.

In the instant case, the ALJ only considered the issue of disability from Plaintiff's alleged onset date of December 31, 2002, through the "DLI" of December 31, 2004. The Plaintiff was not under a disability during that time period. [Tr. 25, 29]. Since the Plaintiff was not disabled during the period under consideration by the ALJ, it was not necessary for the ALJ to determine an onset date nor to call on a medical expert to establish an onset date. [Tr. 29].

SSR 83-20 is entitled, "Titles II and XVI: Onset of Disability." This ruling talks about the importance of determining the onset date of disability in cases when the ALJ has determined that the claimant is disabled, and explains, "The onset date of disability is the first day an individual is

disabled as defined in the Act and the regulations." The introductory paragraph states,

> "In addition to determining that an individual is disabled, the
> decision maker must also establish the onset date of disability. In
> many claims, the onset date is critical; it may affect the period for
> which the individual can be paid and may even be determinative of
> whether the individual is entitled to or eligible for any benefits."
> SSR 83-20.

In this case, because the ALJ did not find that the Plaintiff was disabled in the period from December 31, 2002, through her "DLI" of December 31, 2004, thus, SSR-83-20 was not applicable and the ALJ was not required to call on a medical expert to determine the issue of onset of disability.

### 2. THE ALJ'S FINDING THAT THE PLAINTIFF CAN PERFORM SEDENTARY WORK PRIOR TO HER "DLI" IS NOT BASED ON SUBSTANTIAL EVIDENCE SINCE SAID FINDING IS NOT SUPPORTED BY THE OPINIONS OF ANY PHYSICIANS OF RECORD

The Plaintiff argues that the medical record did not support a finding that she could at least perform sedentary work and cites a state agency consultant's statement that additional evidence was needed to determine functional ability[2]. The record shows that the Plaintiff was able to perform the restricted range of sedentary work determined by the ALJ. The Plaintiff failed to meet her burden of demonstrating in the evidence that she was more restricted than the ALJ found her to be. *See Ellison v. Barnhart*, 355 F.3d, 1272, 1276 (11thCir. 2003);

A claimant bears the burden of proving that she was disabled within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423(D)(5)(a), 1382C(A)(3)(H)(I); 20 C.F.R. § 404.1512(A),

---

[2] Although the ALJ did not specifically reference all of the medical records cited in the Commissioner's brief, she did state in her decision that she had carefully considered the entire record and she did specifically discuss some of the medical records. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision").

©); *Moore v. Barnhart*, 405F.3d 1208, 1211 (11th Cir. 2005); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). A claimant's subjective complaints alone cannot establish disability, the record must include medical signs and findings which show the existence of a medical impairment which, when considered with all the other evidence, would lead to a conclusion that the claimant was disabled. *See* 42 U.S.C. §§423(d)(5)(A), 1382a(a)(3)(H)(I), 20 C.F.R. § 404.1529(a); *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991). Plaintiff failed to provide evidence to support her allegations of disabling symptoms. Substantial evidence supports the ALJ's findings and her conclusion that the Plaintiff was not disabled.

   3. **THE ALJ'S COMMITTED REVERSIBLE ERROR IN MISCLASSIFYING THE PLAINTIFF'S PAST RELEVANT WORK AS A SECRETARY**

The Plaintiff argues that the ALJ erred by determining that her past relevant work as a secretary was performed at the sedentary level of exertion. The Plaintiff testified at the hearing that she had worked in the heating and air-conditioner business from 1977 through 1999, and contends her job description was in fact that of an office manager not a secretary and that it was performed at the light level of exertion.

The ALJ determined that during the Plaintiff's "LDI", the Plaintiff had the residual functional capacity to perform sedentary work, with restrictions. The Plaintiff was able to lift or carry 10 pounds frequently, stand or walk for 2 hours in an 8-hour work day and sit for 6 hours in an 8-hour workday, with alternating sitting and standing at will to relieve her discomfort. The ALJ found the Plaintiff had no limitation of pushing or pulling with her upper or lower extremities but could only occasionally climb, balance, stoop, kneel, crouch and crawl. The Plaintiff was found to have no manipulative, visual, communicative, or environmental limitations. 20 C.F.R. 404.1545

and SSR 96-8p.

At the hearing, the ALJ asked the vocational expert (VE) that if a person was limited to sedentary work could they have performed the Plaintiff's past relevant work. [Tr. 314]. The VE stated that by using the Dictionary of Occupational Titles (DOT) definition, the Plaintiff could perform her past relevant work as a secretary. [Tr. 261, 314]. The VE stated that his opinion would remain even if a sit/stand option were added, or if occasional postural limitations were added. [Tr. 314]. The VE did state, however, that if the job required up to four hours a day of walking, that it would not fall within the sedentary category. [Tr. 314].

In regards to the Plaintiff's activities of daily living, she testified that she could drive, but could not sit for too long. In a form that the Plaintiff completed in July of 2005, she stated she could prepare meals, take care of her personal hygiene, do a little housekeeping, laundry or shopping and go to the movies, in spite of having continuous pain. [Tr. 28].

The Plaintiff further testified that Vicodin took the edge off her pain. In July 2005, the Plaintiff stated she received cortisone injections to her knees, which provided relief for about 3 months. The Plaintiff did not feel that physical therapy helped her in anyway. [Tr. 28] In January 2006, the Plaintiff stated that Hydrocodone, Ultram and Lisinoopril caused her dizziness and the Tricor and Avandia caused her to have nausea, dizziness and weakness.. The medical evidence, however, fails to show that the Plaintiff was dizzy, nauseated or weak at her examinations between December 31, 2002 and December 31, 2004, "her DLI" and the only time period being considered.

The ALJ properly found that the Plaintiff had some limitations, but that the evidence as a whole does not support such debilitating limitations as described by the Plaintiff that would have precluded all work activity between December 31, 2002 and December 31, 2004.

### 4. THE ALJ'S CREDIBILITY FINDING IS NOT BASED ON SUBSTANTIAL EVIDENCE

The Plaintiff contends the ALJ failed to apply the proper standard for the evaluation of pain and credibility and that the ALJ's RFC determination is contrary to the medical evidence of record. The Plaintiff argues that the record includes a report of MRI findings of the lumbar spine dated May 16, 2003, prior to her date last insured, which showed degenerative dis disease, most severe at L4-5, L4-5 stenosis and L5-S1 with severe osteoarthritic changes. [Tr. 111]. Although the MRI did show the Plaintiff to have degenerative disc disease most severe at L4-L5 and show there was disc space narrowing and dehydration of the disc, it also shows that the Plaintiff's vertebral bodies maintained normal heights, alignment and signal. There was no evidence of any fracture and no focal mass. [Tr. 111]. The Plaintiff further argues the record also includes another MRI dated April 11, 2005, which showed multilevel disc bulges. However, this report is after the Plaintiff's date last insured and is not considered.

The Plaintiff states the ALJ misstated her limited daily activities, performed in the confines of her home and that the Plaintiff's responses on a pain questionnaire revealed that her pain is: "caused by bending, kneeling, standing, walking, sitting in one position" and that she experienced "pain every day and it lasts all day long and through the night." [Tr.86]. The Plaintiff also reported that she had pain when taking clothes out of the dryer, shopping for food, lifting "as little as a gallon of milk from the refrigerator," standing at the stove and walking to the refrigerator; and getting in and out of the tub and standing in the shower. [Tr.86-87]. The Plaintiff stated that "virtually everything about housekeeping is painful" which is why she "hires a housekeeper plus

her grandchildren do most of the housekeeping." [Tr. 87]. The Plaintiff further contends that the ALJ rejected the Plaintiff's complaints of medication side effects because they were not documented. The Plaintiff argues that the record shows she was taking: Vicodin, Bextra, and Darvocet. [Tr. 237-241].

The Eleventh Circuit pain standard requires (1) evidence of an underlying medical condition and either (2) objective evidence that confirms the severity of the alleged pain arising from that condition, or (3) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain. Once the standard is met, the ALJ must still evaluate the intensity and persistence of the symptoms based on all of the evidence of record. 20 C.F.R. 404.1529©). The ALJ may discredit a claimant's subjective testimony regarding pain if he articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Determining the credibility of a claimant is the duty of the Commissioner. *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Id*.

The evidence of record supported the ALJ's finding that the Plaintiff could at least perform the restricted range of sedentary work. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004); *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). The Plaintiff failed to prove that she could not perform the restricted range of sedentary work found by the ALJ. Substantial evidence supports the ALJ's findings and her conclusion that the Plaintiff was not disabled within the meaning of the Social Security Act.

## III. CONCLUSION

After giving careful consideration to all the evidence, the Administrative Law Judge properly determined from the medical evidence that the combination of Plaintiff's impairments existing December 31, 2002, [her alleged disability date], through her date last insured of December 31, 2004. [the date Plaintiff's insured status expired] did not indicate a severe totally disabling condition. Therefore, the Administrative Law Judge found Plaintiff was not under a disability, as that term is defined in the Social Security Act and regulations. The ALJ's decision is consistent with the requirements of law and supported by substantial evidence. Accordingly, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE and ENTERED** in Chambers at Fort Myers, Florida, this day of 22nd day of September, 2009.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to:
All Counsel of Record